Jack D. Edwards, 6-3877
Kaden B. Canfield, 7-6238
EDWARDS LAW OFFICE, P.C.
PO Box 5345
Etna, WY   83118
Phone:   307.883.2222
Fax:   307.883.0555
jack@edwardslawofficepc.com
kaden@edwardslawofficepc.com
*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## IN AND FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| LUIS A. JAQUEZ MARQUEZ, | |
| Plaintiff, | **COMPLAINT** |
| v. | |
| PARADISE FARMS, INC. A WYOMING DOMESTIC PROFIT CORPORATION; HARVEY KAUFMAN, AN INDIVIDUAL; PATTY KAUFMAN, AN INDIVIDUAL; and JOSHUA KAUFMAN, AN INDIVIDUAL, | Case No.: 1:22-cv-00183 |
| | **JURY TRIAL DEMANDED** |
| Defendants. | |

The Plaintiff, Luis A. Jaquez Marquez, by and through his attorney, Kaden B. Canfield of Edwards Law Office, P.C., brings this action for damages to redress Defendants Paradise Farms, Inc., Harvey Kaufman, Patty Kaufman, and Joshua Kaufman (hereinafter collectively referred to as "Defendants"), actions in causing the severe and permanent injuries to Plaintiff Luis A. Jaquez Marquez.  For complaint against the Defendants, Plaintiff states and alleges as follows:

1.       This is a civil action for personal injuries and damages arising out of negligence causing severe and permanent injury.

## THE PARTIES

2.     Plaintiff Luis A. Jaquez Marquez (hereinafter "Plaintiff" or "Mr. Jaquez") is an individual, a permanent resident of the United States, and since December of 2018, has been a resident of the of the State of New Mexico.

3.     At all times material hereto, Defendant Paradise Farms, Inc. (hereinafter "Paradise Farms") was a Wyoming Corporation authorized to do business throughout the state of Wyoming, for which it received substantial revenue.

4.     At all times material hereto, Defendant Harvey Kaufman, an individual, was and is a resident of Platte County, Wyoming.

5.     At all times material hereto, Defendant Patty Kaufman, an individual, was and is a resident of Platte County, Wyoming.

6.     At all times material hereto, Defendant Joshua Kaufman, an individual, was and is a resident of Platte County, Wyoming.

## JURISDICTION AND VENUE

7.     This Court has federal diversity jurisdiction pursuant to 28 U.S.C. § 1332. Specifically, complete diversity of citizenship of the parties exists and this is an action for damages that exceeds Seventy-Five-Thousand Dollars ($75,000.00), exclusive of interest, costs and attorneys' fees.  Therefore, this action falls within the jurisdictional requirements of this Honorable Court.

8.     Venue is proper under 28 U.S.C. § 1391(b)(2) because the tort(s) underlying this Complaint occurred in Platte County, Wyoming, which falls within this judicial district.

## STATEMENT OF FACTS COMMON TO ALL CLAIMS

9.      In September of 2018, Plaintiff Mr. Jaquez was a 48-year-old man working for Defendant Paradise Farms as a farm laborer.

10.     During his tenure with Paradise Farms, Mr. Jaquez was provided employee housing at Defendant Paradise Farms and did in fact live in the employee housing owned or controlled by Paradise Farms.

11.     At all times relevant hereto, Defendant Paradise Farms was a Wyoming Corporation owned and operated by Defendant Harvey Kaufman and his wife, Defendant Patty Kaufman.

12.     In December of 2018, Defendants Harvey Kaufman, Patty Kaufman, and Joshua Kaufman worked at Defendant Paradise Farms, and upon information and belief, received compensation from Defendant Paradise Farms for their efforts.

13.     At all times relevant hereto, Defendants Harvey Kaufman, Patty Kaufman, and Joshua Kaufman were acting as agents or on behalf of or in the interest of Defendant Paradise Farms.

14.     At all times relevant hereto, Defendants Harvey Kaufman, Patty Kaufman, and Joshua Kaufman were acting within the course and scope of their employment at Defendant Paradise Farms.

15.     At all times relevant hereto, Defendants Harvey Kaufman and Patty Kaufman were responsible for and did in fact manage the affairs and operations of Defendant Paradise Farms.

16.     Defendants Harvey Kaufman and Patty Kaufman delegated general supervisory responsibility at Defendant Paradise Farms to their son, Defendant Joshua Kaufman, to both act and act on their behalf, and to supervise Mr. Jaquez.

17.     On or about September 25, 2018, Mr. Jaquez was tasked by Defendant Harvey Kaufman with assisting him and Defendant Joshua Kaufman in replacing a crop conveyer belt on a mechanical sugar beet harvester owned and operated by Defendant Paradise Farms.

18.     The replacement crop conveyer belt was made of tempered steel bars and heavy-duty vulcanized web belting, rivetted together. It weighed hundreds of pounds.

19.     In replacing the crop conveyer belt, the belt needed to be weaved through the mechanical sugar beet harvester and then stretched and clamped together to make a continuous belt that could then be used to convey beets through the harvester machine.

20.     Mr. Jaquez was specifically tasked with weaving and pulling the crop conveyer belt through the bottom of the machine and then handing the belt up to Defendant Joshua Kaufman who was stationed on top of the harvester machine, over 10 feet in the air. After handing off the belt, Mr. Jaquez was to continue pulling the belt through the machine so that Defendant Joshua Kaufman could splice the crop conveyer belt together.

21.     Mr. Jaquez weaved the conveyer belt through the harvester machine and then handed off one end of the conveyer belt to Defendant Joshua Kaufman. Mr. Jaquez then stooped down and continued pulling the belt through the harvester machine and up towards Defendant Joshua Kaufman.

22.     Suddenly, and without notice to Mr. Jaquez, Defendant Joshua Kaufman dropped the end of the heavy steel conveyer belt, which fell directly onto Mr. Jaquez, striking Mr. Jaquez in the head, neck, and back (hereinafter the "Work Incident").

23.    As a result of the Work Incident, Mr. Jaquez temporarily lost consciousness.

24.    Defendants Harvey Kaufman and Joshua Kaufman witnessed the Work Incident.

25.    Upon information and belief, Defendant Patty Kaufman was made aware of the details of the Work Incident on the same day as the Work Incident.

26.    Defendants Harvey Kaufman and Joshua Kaufman failed to warn Mr. Jaquez that the steel conveyer belt was falling from the top of the harvester machine and would strike Mr. Jaquez.

27.    Any reasonable person observing the Work Incident would have believed that Mr. Jaquez faced the risk of having been seriously injured given that the heavy steel conveyer belt fell on Mr. Jaquez's head, neck and back.

28.    Any reasonable employer or supervisor would have insisted that Mr. Jaquez be promptly evaluated by a medical professional following the Work Incident.

29.    Mr. Jaquez regained consciousness and was visibly disoriented.

30.    Upon regaining consciousness, Defendants Harvey Kaufman, Patty Kaufman, and Joshua Kaufman did not reasonably render first aid and did not summon aid from a medical professional.

31.    Instead, Defendants Harvey, Patty Kaufman, and Joshua Kaufman refused to take Mr. Jaquez to receive medical evaluation and took Mr. Jaquez to the farm laborer quarters with instructions that Mr. Jaquez should rest for the remainder of the workday and should not attempt to seek professional medical treatment.

32.    Due to the severity of the Work Incident, Defendants Harvey Kaufman, Patty Kaufman and Joshua Kaufman could not have reasonably believed that rest alone was sufficient

to treat Mr. Jaquez's injuries, and, upon information and belief, had they been injured in a similar manner, they would not have accepted that rest was sufficient to treat their injury.

33.     For over two weeks, Mr. Jaquez lied in bed in excruciating pain and suffered periods of disorientation.

34.     Although under the care and supervision of Defendant Paradise Farms and Defendants Harvey Kaufman, Patty Kaufman, and Joshua Kaufman, Mr. Jaquez was given nothing to treat his excruciating pain besides one pill of over-the-counter pain medication.

35.     Mr. Jaquez repeatedly told Defendants Harvey Kaufman, Patty Kaufman, and Joshua Kaufman that he was seriously injured.  He begged them for assistance.

36.     Defendants repeatedly refused Mr. Jaquez's requests for assistance and even instructed others who were willing to help that they should not offer help to Mr. Jaquez.

37.     Defendants grew increasingly angry that Mr. Jaquez had not returned to work.

38.     Defendant Harvey Kaufman began addressing Mr. Jaquez each morning by angrily pounding on the door of Mr. Jaquez's bedroom and insisting that Mr. Jaquez stop exaggerating the nature of his work injuries and get back to work.

39.     Mr. Jaquez could not move his left arm and was physically unable to return to work due to his pain.

40.     At some point a friend of Mr. Jaquez provided him with a small amount of ibuprofen tablets, which Mr. Jaquez began using for pain, with little benefit.

41.     Defendant Harvey Kaufman insisted that Mr. Jaquez return to work.  Defendant Harvey Kaufman threatened that Mr. Jaquez would be fired and removed from the premises by the County Sheriff if Mr. Jaquez did not return to work.  Mr. Jaquez had nowhere to go and no

viable options, so he returned to work in a diminished capacity, driving a truck for Paradise
Farms with the use of his right arm, only.

42.     Mr. Jaquez's symptoms did not improve.  In fact, he was getting worse by being
forced to work.  After over two months of living and working in excruciating pain, Mr. Jaquez
went to a medical clinic in Wheatland, Wyoming so that he could get relief from his pain.

43.     On November 15, 2018, Mr. Jaquez was treated at the Wheatland Clinic by a
physician's assistant for headaches, head pain, neck pain, and radiating left shoulder pain.  He
was given pain medication, X-rays were ordered, and he was advised not to work.

44.     X-rays taken on November 15, 2018 revealed that Mr. Jaquez broke and
completely separated his left clavicle in the Work Incident.  The break was not healing properly.

45.     Defendants Harvey Kaufman, Patty Kaufman, and Joshua Kaufman learned that
Mr. Jaquez had sought medical assistance.   They became furious with Mr. Jaquez and insisted
that Mr. Jaquez return to work.

46.     On November 26, 2018, Mr. Jaquez returned to the Wheatland Clinic and was
advised by a physician's assistant to keep his left arm in a sling and to not work.  It was
recommended that Mr. Jaquez follow up with an actual medical doctor.

47.     The following day, November 27, 2018, Mr. Jaquez was seen by Dr. Dale
Adishian, M.D. at the Wheatland Clinic.  The doctor advised Mr. Jaquez that he may need
surgery to repair his clavicle.  Dr. Adishian also recommended that Mr. Jaquez be seen by a
primary care provider for further evaluation of Mr. Jaquez's headaches, facial numbness and
other Work Incident related complaints.

48.     On November 28, 2018, Mr. Jaquez was seen by a nurse practitioner at a primary care provider facility for his headache and facial numbness ailments.  The nurse practitioner observed facial droop on the left side of Mr. Jaquez's face, diagnosing him with Bell's palsy.

49.     Mr. Jaquez next had a follow up appointment with the same nurse practitioner on December 5, 2018.  He reported a decrease in his Bell's palsy symptoms, but ongoing and increased pain in his left shoulder and additional complaints of inflammation and tingling down to his foot that was disrupting his sleep.  Lumbar radiculopathy was suspected.  Due to his limited financial resources, Mr. Jaquez elected to wait until his shoulder was treated before getting an MRI on his back.  He was again advised not work.

50.     Defendants Harvey Kaufman, Patty Kaufman, and Joshua Kaufman knew that Mr. Jaquez sought additional medical treatment and that Mr. Jaquez was advised not to work due to his work-related injuries.

51.     Defendant Joshua Kaufman became enraged that Mr. Jaquez would not return to full work status.  He stormed into the farm labor housing where Mr. Jaquez was staying.

52.     Defendant Joshua Kaufman informed Mr. Jaquez that because he was not working, he was trespassing on Defendants' property and that he was to leave immediately, or Defendant Harvey Kaufman would have the Sheriff remove Mr. Jaquez.

53.     Upon information and belief, Defendants Harvey Kaufman and Patty Kaufman were aware of and acquiesced to or instructed Defendant Joshua Kaufman's actions in threatening and removing Mr. Jaquez from the farm laborer housing.

54.     In response to Defendant Joshua Kaufman's insistence that Mr. Jaquez leave Paradise Farms, Mr. Jaquez pleaded for help with his medical treatments.  Mr. Jaquez reminded Defendant Joshua Kaufman that prior to the injury, Mr. Jaquez was Paradise Farms' best laborer:

he was the first person on the job in the morning, and the last person to quit each evening. He

told Defendant Kaufman that he did not understand why Defendants were treating him so poorly.

55.     Defendant Joshua Kaufman refused to help Mr. Jaquez and refused to listen to his

pleas.

56.     When Mr. Jaquez asked for assistance with medical bills, Defendant Patty

Kaufman berated Mr. Jaquez and told him to "go back to Mexico" to see if he could obtain

medical treatment there.

57.     Unable to work and with no residence, Mr. Jaquez moved to New Mexico so that

he could obtain assistance from his family members who lived in the area.

58.     Upon moving to New Mexico, Mr. Jaquez reestablished medical care to treat his

ongoing headaches, neck, shoulder, and back pain related to the Work Incident.

59.     Mr. Jaquez underwent surgery to reconnect his collarbone that was broken in the

Work Incident.

60.     Mr. Jaquez had a laminectomy surgery in his neck to address the radicular

symptoms caused in the Work Incident. Relief was not complete and was only temporary.

61.     Mr. Jaquez's neck symptoms continued to worsen, which caused increased pain

and paresthesia in his arm.

62.     Mr. Jaquez next underwent a neck fusion surgery in his C5-6 segment to address

the injuries caused in the Work Incident.

63.     Mr. Jaquez will likely need another segment of his neck fused as a result of the

injuries to his neck caused in the Work Incident.

64. Mr. Jaquez has received some conservative treatments for his lower back nerve pain and radicular symptoms caused by injuries in the Work Incident. However, this pain and the symptoms remain.

65. Since the Work Incident, with the exception of the times he was forced to work by Defendants Harvey Kaufman and Joshua Kaufman, Mr. Jaquez has been unable to return to any form of gainful employment.

66. Since the Work Incident, Mr. Jaquez has been forced to rely upon government medical assistance and his family members for his care and sustenance.

67. Since the Work Incident, Mr. Jaquez remains in daily pain.

68. As a result of the Work Incident and delay in treatment, Mr. Jaquez suffered a great reduction in his quality of life and has lived with constant suffering and disability.

69. As a result of the Work Incident and delay in treatment, Mr. Jaquez has and will continue to suffer losses of income and the ability to obtain gainful employment.

70. As a result of the Work Incident and delay in treatment, Mr. Jaquez will require ongoing medical attention and assistance with his activities of daily living, likely for the remainder of his life.

## FIRST CLAIM FOR RELIEF

*Negligence of Defendant Paradise Farms*

71. Plaintiff alleges and incorporates by reference herein, all of the allegations contained in paragraphs above and further alleges as follows:

72. Defendant Paradise Farms is liable for its own independent negligence and reckless acts and omissions.

73.     Defendant Paradise Farms is vicariously liable for the acts and omissions of its employees and agents, Defendants Harvey Kaufman and Joshua Kaufman, pursuant to the doctrine of respondeat superior.

74.     Defendant Paradise Farms owed the duty to provide Mr. Jaquez with a reasonably safe place to work and with competent workers.  In the discharge of this duty, Defendant Paradise Farms must exercise the care and skill that a person of ordinary prudence would observe under the circumstances in furnishing its employees with reasonably safe machinery, appliances, tools, and place to work in keeping the same in reasonably safe repair, and in employing competent and sufficient employees with whom to work.

75.     Defendant Paradise Farms had actual knowledge of the hazards and serious nature of the risks involved in the work Mr. Jaquez was ordered to perform on September 25, 2018.

76.     Upon information and belief, Defendant Paradise Farms knew of the general risks, as well as the broader dangers involved in the work Mr. Jaquez was ordered to perform.

77.     Upon information and belief, Defendant Paradise Farm was aware of the high probability that serious injury would result to Mr. Jaquez by requiring him to handle the steel conveyer belt from the ground on September 25, 2018 without taking proper safety measures.

78.     Despite awareness of the high probability that serious injury may result from the work Mr. Jaquez was ordered to perform, Defendant Paradise Farms disregarded the duty and need to act reasonably by, among other things, these this acts or omissions:

(a) Requiring Mr. Jaquez to perform an unreasonably dangerous act by being subjected to the egregious and unsafe working conditions;

(b) Failing to provide required safety equipment and personal protective equipment in a malicious and dangerous manner;

(c) Failing to abide by Federal, Wyoming, and local safety regulations and company policies and procedures;

(d) Failing to adequately train and educate Defendants Harvey Kaufman and Joshua Kaufman regarding their duties as employees for Paradise Farms and their responsibilities for employee safety on the job and specifically dealing with the sugar beet mechanical harvester.

(e) Failing to properly train its supervisory employees to comply with company policies and procedure;

(f) Failing to properly train its supervisory employees to comply with Federal, Wyoming and local safety regulations;

(g) Ratifying, condoning, or otherwise permitting of the actions of Defendants Harvey Kaufman, Patty Kaufman, and Joshua Kaufman;

(h) Instituting, establishing or otherwise encouraging unsafe and reckless company policies, procedures and dangerous working conditions at Paradise Farms and dealing with the maintenance of the mechanical sugar beet harvester, and;

(i) Failing to adequately train and educate Defendants Harvey Kaufman, Patty Kaufman, and Joshua Kaufman regarding the risks associated with the dangerous, and improper use of equipment by employees.

79.     Defendant Paradise Farms breached its duty of care to Mr. Jaquez and acted in complete disregard for the health and safety of Mr. Jaquez by failing to use reasonable care.

80.     As a result of all Defendants negligent acts and/or omissions, the work environment Defendant Paradise Farms subjected Mr. Jaquez to was unsafe.

81.    As a result of all Defendants negligent acts and/or omissions Mr. Jaquez was severely injured, and his injuries were the proximate cause of these negligent acts and/or omissions.

## SECOND CLAIM FOR RELIEF

*Negligence of Defendants Harvey Kaufman, Patty Kaufman, and Joshua Kaufman*

82.    Plaintiff Mr. Jaquez alleges and incorporates by reference herein, all of the allegations contained in paragraphs above and further alleges as follows:

83.    Defendants Harvey Kaufman, Patty Kaufman, and Joshua Kaufman are liable for their own independent negligent and reckless acts and omissions.

84.    Defendants Harvey Kaufman, Patty Kaufman, and Joshua Kaufman were responsible for Mr. Jaquez's safety and for providing safe working conditions in which Mr. Jaquez was ordered to perform.

85.    Defendants Harvey Kaufman, Patty Kaufman, and Joshua Kaufman had actual knowledge of the hazards and serious nature of the risks involved in the work Mr. Jaquez was ordered to perform on September 25, 2018.

86.    Defendants Harvey Kaufman, Patty Kaufman, and Joshua Kaufman knew of the general risks, as well as the broader dangers involved in the work Mr. Jaquez was ordered to perform.

87.    Defendants Harvey Kaufman, Patty Kaufman, and Joshua Kaufman were aware of the high probability that serious injury or death could result to Mr. Jaquez by requiring him to pull a steel conveyer belt through a mechanized harvester and hand it to a person up stationed above the

harvester without sufficient employees and without the use of proper equipment or other safety measures on September 25, 2018.

88.     Defendants Harvey Kaufman, Patty Kaufman, and Joshua Kaufman were aware that Defendant Joshua Kaufman could negligently or inadvertently let go of the steel conveyer belt, and that if he did, the steel conveyer belt would fall and with high probability, result in serious injury or death to Mr. Jaquez who was ordered to stand and work below the suspended steel convey belt on mechanized sugar beet harvester.

89.     Despite awareness of the high probability that serious injury or death may result from ordering Mr. Jaquez work in this manner without the use of proper equipment or safety measures, Defendants Harvey Kaufman, Patty Kaufman, and Joshua Kaufman disregarded their duty and the need to act reasonably by, among other things, these acts or omissions:

a)     Requiring Mr. Jaquez to perform an unreasonably dangerous act by being subjected to the egregious and unsafe work condition at Paradise Farms;

b)     By direct command and through his managerial capabilities, did instruct, order, condone or otherwise require Mr. Jaquez to be subjected to unreasonably dangerous working conditions;

(c)     Failing to provide Mr. Jaquez with reasonable and necessary safety equipment in dealing with the mechanized harvester at the Paradise Farms;

e)     Failing to abide by Federal, Wyoming, and local work safety standards at the Paradise Farms;

f)     Instituting, establishing or otherwise encouraging unsafe and reckless policies, practices, procedures and dangerous working conditions at Paradise Farms; and

g)  Failing to adequately advise and warn Mr. Jaquez regarding the risks Defendants knew were associated with the dangerous activities undertaken while working on the steel conveyer belt on the mechanized beet harvester at Paradise Farms.

90.  Defendants Harvey Kaufman, Patty Kaufman, and Joshua Kaufman owed a duty of care to Mr. Jaquez and acted in complete disregard for the health and safety of Mr. Jaquez by failing to use reasonable care.

91.  As a result of the Defendants negligent acts and/or omissions, Mr. Jaquez was severely injured in the Work Incident.

92.  Defendants Harvey Kaufman, Patty Kaufman, and Joshua Kaufman's negligent acts and/or omissions were the proximate cause of Mr. Jaquez's injuries from the Work Incident.

93.  At all times herein mentioned, Mr. Jaquez was following the orders of Defendants Harvey Kaufman, Patty Kaufman, and Joshua Kaufman, and he was acting in a careful and prudent manner; relying on the experience, training, and knowledge of his supervisors Defendants Harvey Kaufman, Patty Kaufman, and Joshua Kaufman.

94.  Defendants knew that Mr. Jaquez had no formal training regarding steel conveyer belt maintenance on mechanized beet harvesters.

95.  Considering his lack of knowledge and training, Mr. Jaquez did not assume the risks of his injuries.  He was not contributorily negligent for the injuries caused in the Work Incident.

96.  As a result of Defendants Harvey Kaufman, Patty Kaufman, and Joshua Kaufman's negligent acts and/or omissions, the work environment Mr. Jaquez was subjected to was unsafe.

97.     As a result of Defendants Harvey Kaufman, Patty Kaufman, and Joshua Kaufman's negligent acts and/or omissions Mr. Jaquez was severely injured, and his injuries were the proximate cause of these negligent acts and/or omissions.

## **THIRD CLAIM FOR RELIEF**

*Defendants Harvey Kaufman, Patty Kaufman, and Joshua Kaufman for Post Work Incident*

*Negligence*

98.     Plaintiff Mr. Jaquez alleges and incorporates by reference herein, all of the allegations contained in paragraphs above and further alleges as follows:

99.     As president, owner, and manager at Paradise Farms, Defendant Harvey Kaufman was responsible for Mr. Jaquez's safety at Paradise Farms and had a duty to render or summon emergency medical aid, as any reasonable employer would, for his employees who he knew or should have known were injured while working at Paradise Farms, to include Mr. Jaquez.

100.    As co-owner and co-manager of Paradise Farms, Defendant Patty Kaufman was responsible for Mr. Jaquez's safety at Paradise Farms and had a duty to render or summon emergency medical aid, as any reasonable employer would, for her employees who she knew or should have known were injured while working at Paradise Farms, to include Mr. Jaquez.

101.    As a supervisor at Paradise Farms, with direct responsibility over Mr. Jaquez, and as the individual whose actions directly and foreseeably caused injury to Mr. Jaquez, Defendant Joshua Kaufman was responsible for Mr. Jaquez's safety at Paradise Farms and had a duty to render or summon emergency medical aid, as any reasonable supervisor would, for his employees who he knew or should have known were injured while working at Paradise Farms, to include Mr. Jaquez.

102.     Defendants Harvey Kaufman, Patty, Kaufman, and Joshua Kaufman knew or should have known that Mr. Jaquez was severely injured in the Work Incident and that he required immediate medical attention.

103.     Defendants Harvey Kaufman, Patty Kaufman, and Joshua Kaufman failed to reasonably render or summon emergency medical aid for Mr. Jaquez following the Work Incident.

104.     Defendants Harvey Kaufman, Patty Kaufman, and Joshua Kaufman knew or should have known that delaying Mr. Jaquez's medical attention following the Work Incident was likely to unnecessarily cause Mr. Jaquez additional pain, severe suffering, and cause him aggravation or additional permanent injury.

105.     Despite their knowledge, Defendants Harvey Kaufman, Patty Kaufman, and Joshua Kaufman demonstrated a reckless and willful disregard of the risks of causing Mr. Jaquez additional pain, suffering, and additional injury by refusing to render or summon emergency medical aid to Mr. Jaquez and did in fact cause Mr. Jaquez to suffer additional pain, suffering, and injury.

106.     Defendants Harvey Kaufman, Patty Kaufman, and Joshua Kaufman also knew or should have known that Mr. Jaquez was physically unfit to work following the Work Incident and knew that Mr. Jaquez was in a vulnerable state given that Mr. Jaquez lived in employee housing and was not able to refuse to work or able to obtain alternative work following the Work Incident.

107.     Despite their knowledge, Defendants Harvey Kaufman, Patty Kaufman and Joshua Kaufman demonstrated a reckless and willful disregard of the risks of causing Mr. Jaquez additional pain, suffering, and additional injury by forcing Mr. Jaquez to work in his injured status, over threat of forceful eviction and termination, and, as a result, did in fact cause Mr. Jaquez to suffer additional pain, suffering, and injury.

108.    Defendants Harvey Kaufman, Patty Kaufman and Joshua Kaufman's actions noted above in delaying and refusing medical care to Mr. Jaquez, berating him when he obtained medical care, and forcing him to work in a diminished physical condition, etc. exhibited willful, wanton, reckless and or intentional disregard for the consequences and under circumstances and conditions that a reasonable person would know, or have reason to know that such conduct would, in a high degree of probability, result in the additional pain and suffering and injuries to Mr. Jaquez.

## **FOURTH CLAIM FOR RELIEF**

*Punitive Damages Against Defendants Harvey Kaufman, Patty Kaufman, and Joshua Kaufman*

109.    Plaintiff Mr. Jaquez alleges and incorporates by reference herein, all of the allegations contained in paragraphs above and further alleges as follows:

110.    In addition to compensatory damages, Mr. Jaquez makes a claim for punitive damages against Defendants Harvey Kaufman, Patty Kaufman, and Joshua Kaufman in an amount to be proven at trial for their willful and wanton acts and omissions alleged herein.

111.    The acts and omissions of Defendants Harvey Kaufman, Patty Kaufman, and Joshua Kaufman in this case were so gross and culpable in nature that they constitute reckless indifference and wanton disregard for the law and for the safety of Wyoming employees, including Plaintiff.

112.    Defendants Harvey Kaufman, Patty Kaufman, and Joshua Kaufman committed the acts and omissions alleged herein and subjected Plaintiff to an unsafe work environment in violation of state and federal law and caused Mr. Jaquez to suffer severe and permanent physical and emotional harm that no employee should be expected to endure.

113.    Defendants Harvey Kaufman's, Patty Kaufman's, and Joshua Kaufman's actions should be punished, and an example should be made so that these actions and omissions are not repeated.

114.    This instance of reckless and callous indifference to Plaintiff's safety, and his natural and human rights, should be punished through the imposition of punitive damages so as to make an example of conduct that will not be tolerated.

## DAMAGES

115.    Plaintiff alleges and incorporates by reference herein, all of the allegations contained in the paragraphs above and further alleges as follows:

116.    As a direct and proximate result of the negligent, reckless, willful and/or grossly negligent acts and omissions of Defendant Paradise Farms, by and through its employees or agents, and the negligent, reckless, willful and/or grossly negligent acts and omissions of Defendants Harvey Kaufman, Patty Kaufman, and Joshua Kaufman, Mr. Jaquez sustained permanent physical injury and continues to suffer from injuries for which he is entitled to be compensated, including but not limited to:

    a.  Past, present, and future physical and psychological pain, suffering and impairment;

    b.  Permanent disability and disfigurement;

    c.  Medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

    d.  Loss of enjoyment of life;

    e.  Loss of consortium;

    f.  Past and future impaired earning capacity;

g.   Punitive Damages;

h.   Attorneys' fees and costs;

i.   For pre- and post-judgment interest on all damages as allowed by the law;

j.   For costs of suit incurred herein; and

k.   For such other and further relief as the Court may deem just and proper.

**WHEREFORE**, Plaintiff Mr. Jaquez, respectfully demands judgment for any and all damages available under Title 1, Chapter 38, Wyoming Statutes and all applicable Wyoming law against Defendants Paradise Farms, Inc., Harvey Kaufman, Patty Kaufman, and Joshua Kaufman and for such other and further relief deemed proper by the Court.

Plaintiff requests that the Court issue a Summons to the above-named Defendants to answer or defend against this Complaint.

Plaintiff further demands a jury of six (6) persons on all issues so triable.

**RESPECTFULLY** submitted this _22nd_ day of August 2022.

PLAINTIFF LUIS A. JAQUEZ MARQUEZ

By: _Kaden B. Canfield_
Kaden B. Canfield, 7-6238
EDWARDS LAW OFFICE, P.C.
PO Box 5345
Etna, WY   83118
Phone:   307.883.2222
Fax:   307.883.0555
kaden@edwardslawofficepc.com
*Of Attorneys for Plaintiff*